Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **ABC IP, LLC, and Rare Breed Triggers, Inc.,** | ) | CASE NO. 3:25-cv-00201-DCG |
| | ) | |
| **Plaintiffs.** | ) | |
| | ) | **First Amended Complaint** |
| **v.** | ) | |
| | ) | |
| **Hanes Tactical LLC, and Damion Terrell Bennett,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

---

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively "Plaintiffs") accuse Hanes Tactical LLC ("Hanes") and Damion Terrell Bennett ("Bennett") (collectively, "Defendants"), of infringing U.S. Patent Nos. 12,038,247 ("the '247 Patent") and 7,398,723 ("the '723 Patent") as follows:

### PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed Triggers, Inc. ("Rare Breed") is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150, Wichita Falls, TX 76306.

3.      Upon information and belief, Defendant Hanes Tactical LLC ("Hanes") is a limited liability company existing under the laws of the state of Texas and has a place of business at 2414 Carrington Road, Fort Bliss, Texas 79916.

4.      Upon information and belief, Defendant Damion Terrell Bennett ("Bennett") is an individual and member of the United Staes Army residing and doing business at 2414 Carrington Road, Fort Bliss, Texas 79916.

5.      Upon information and belief, Bennett did business as "Hanes Tactical" as a sole proprietor before forming the Hanes Tactical LLC entity.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, 284, and 285.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

8.      Personal jurisdiction and venue over Defendants are proper in this District because the Defendants reside in and/or have a place of business this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or have a regular and established place of business in this District.

## BACKGROUND

10.      This lawsuit asserts contributory and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent") and 7,398,723 ("the '723 Patent"). True and correct copies of the '247 Patent and the '723 Patent are attached hereto as Exhibits A and B, respectfully.

11.      The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

FIRST AMENDED COMPLAINT - 2 -

12.    The '723 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 15, 2008. The application from which the '723 Patent issued has a priority date of April 25, 2003.

13.    The '723 Patent lapsed for nonpayment of its final maintenance fee. The inventor and owner of the '723 Patent at the time, Brian A. Blakley, did not receive a reminder of the maintenance fee being due from his attorney and the failure to pay the maintenance fee in time was inadvertent. A Petition to Accept Unintentionally Delayed Payment of Maintenance fee was filed on April 20, 2022, and the '723 Patent was reinstated on May 16, 2022.

14.    ABC is the current assignee and owner of all right, title, and interest in and to the '247 and '723 Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

15.    The '723 Patent expired on September 22, 2024.

16.    Rare Breed is the exclusive licensee of the '247 and '723 Patents.

17.    Upon information and belief, Defendants have committed acts of contributory and/or induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

18.    On March 28, 2025, counsel for Plaintiffs sent a cease and desist demand letter to Hanes, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

### The Invention

19.    The '723 Patent discloses a semiautomatic trigger mechanism that forces the trigger to reset via a cam and claims a method of accelerating the firing cycle using such a trigger mechanism.

20.     The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

21.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pull on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

22.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the

trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single function of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

23.     In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

24.     The '723 Patent teaches a trigger mechanism in which the cycling action of a semiautomatic firearm causes a cam to forcibly reset the trigger member and holds it there until the action has reached the end of its cycle and is ready to fire again.

25.     The '723 Patent claims a method of accelerating the firing cycle of a semi-automatic firearm. According to the method, a firearm trigger is depressed with a finger to discharge the firearm.  This activates a reciprocating mechanism within the firearm (such as a bolt or bolt carrier) which causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready to fire position.

26.     The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

27.    The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam locks the trigger member, preventing it from being pulled a second (or subsequent) time, until the bolt carrier has returned to the in-battery position.

### The Infringing Devices

28.    On information and belief, Defendants are currently making, using, selling, and/or offering for sale a "Super Safety" (3 Position) ("the Infringing Device"), which embodies the technology claimed in the '247 Patent.

29.    On information and belief, Defendants made, imported, used, sold, and/or offered for sale the Infringing Device, which embodies the technology claimed in the '723 Patent prior to its expiration.

30.    On information and belief, technical specification for the Infringing Devices were exported to China.

31.    On information and belief, the Infringing Devices were imported by Defendants from China.

32.    On information and belief, the nature of the infringing Devices was falsely identified on import documents.

33.    On information and belief, Defendants sell or offer for sale the Infringing Device via at least Facebook posts and direct messaging.  Exemplary photographs of these are shown below:



34.     Defendants sell a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 Patent. Defendants also sell precut trigger members separately that can be used with cam assemblies made by others to assemble an infringing combination, as shown below:



35.    Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

36.    These parts sold by Defendants are components of a patented apparatus, constituting a material part of the invention. The defendants know that these are especially made or especially adapted for use in an infringement of the '247 and '723 Patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

37.    Defendants' manufacture, sale, and offer for sale of parts constitute contributory infringement under 35 U.S.C. § 271(c), and their conduct in facilitating their use with third-party devices constitutes active inducement of infringement under 35 U.S.C. § 271(b).

38.     Defendants instructed purchasers to assemble the Infringing Devices in a way that induces infringement the '247 and '723 Patents.

39.     The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

40.     The user can move the cam between safe, standard disconnector semiautomatic mode, and forced reset semiautomatic mode.

41.     For the reasons explained in more specificity below, the Defendants' Infringing Devices each infringe at least one claim of the '247 Patent and contributorily infringe and/or induce infringement of the '723 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 27(b) and/or (c).

42.     At least in view of the Defendants' continued infringement after ABC's demand letter, the infringement is willful.

### COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

43.     The allegations set forth in paragraphs 1-42 are fully incorporated into this First Count for Relief.

44.     Upon information and belief, Defendants have and continues to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

45.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 15. A firearm trigger mechanism comprising: | The Infringing Device is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br><br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br> |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot | The Infringing Device is installed in a fire control mechanism pocket of a receiver along with a hammer that has a sear catch and a hook for engaging a disconnector. |

| Claim Language | Infringing Device |
|---|---|
| on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br><br>The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier<br><br><br>Hammer Set Position<br><br><br>Hammer Released position |

| Claim Language | Infringing Device |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Infringing Device is installed with a trigger member in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear.<br><br><br>Trigger Member Set Position<br><br><br>Trigger Member Released Position |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.<br><br><br>Hammer and Trigger Member Set Positions |
| said disconnector having a hook for engaging said hammer and adapted to | The disconnector is adapted to be mounted in the fire control mechanism pocket to pivot on a |

| Claim Language | Infringing Device |
|---|---|
| be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer.<br><br> |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The Infringing Device has a cam that is adapted to be movably mounted in the fire control mechanism pocket and includes a cam that has a cam lobe.<br><br>The cam is movable between a first position and a second position. In the second position the cam lobe forces said trigger member towards the set position.<br><br><br>Cam Lobe First Position |

| Claim Language | Infringing Device |
|---|---|
| | ![Cam Lobe Second Position illustration]<br>Cam Lobe Second Position |
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | In the standard semi-automatic mode, the cam is in a first position during at least part of the firing cycle. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook.<br><br><br><br>Thereafter, the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm. |

| Claim Language | Infringing Device |
|---|---|
|  |  |
| whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | When in the forced reset semi-automatic mode, the cam is in the second position during at least part of the firing cycle.<br><br>Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook doesn't catch the hammer hook.<br><br>Thereafter, the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. |

| Claim Language | Infringing Device |
|---|---|
| |  |

46.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

47.     The Defendants instruct their customers to assemble the components it sells into an infringing combination of parts. Thus, Defendants actively induce infringement of the '247 Patent.

48.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device are infringement under 35 U.S.C. § 271 (a), (b), and/or (c).

49.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

50.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

51.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – INDIRECT INFRINGEMENT OF THE '723 PATENT

52.     The allegations set forth in paragraphs 1-51 are fully incorporated into this Third Count for Relief.

53.     Upon recently learned information and belief, Defendants have contributorily infringed and/or induced infringement of Claim 1 of the '723 Patent prior to its expiration by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

54.     As shown in Paragraph 35, above, Defendants were selling or offering for sale the Infringing Devices at least as of February 2, 2024.

55.     An exemplary comparison of the Infringing Device with claim 1 of the '723 Patent when assembled and used as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 1. A method of accelerating the firing cycle of a semi-automatic firearm comprising the steps of: | When installed and used as intended and instructed, the Infringing Device allows the user to use a method that accelerates the firing cycle of a semi-automatic firearm. |
| depressing a firearm trigger with a finger to discharge the firearm; | When installed and used as intended and instructed, the user depressing the trigger with a finger causes the firearm to discharge.<br><br> |

| Claim Language | Infringing Device |
|---|---|
| activating a reciprocating mechanism within the firearm that causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position | When the firearm is discharged, a reciprocating mechanism (bolt or bolt carrier assembly) within the firearm is activated, it causes the cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position.<br><br> |
| until the reciprocating mechanism has reached an approximately closed, ready to fire position. | The trigger is held forward in the ready to fire position by the cam until the reciprocating mechanism (bolt or bolt carrier) until the reciprocating mechanism has reached an approximately closed, ready to fire position.<br><br> |

56.    Because the claim "comprises" specified steps, the fact that the Infringing Devices, when installed and used as the Defendants instruct, can also operate according to another method does not avoid infringement.

FIRST AMENDED COMPLAINT - 18 -

57.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

58.     The Defendants instructed their customers to assemble the components they sold into an infringing combination of parts. Thus, Defendants actively induced infringement of the '247 Patent prior to its expiration.

59.     Accordingly, when a purchaser installed and used Defendants' Infringing Devices as instructed, there was direct infringement of the '723 Patent.

60.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices was an indirect infringement of the '723 Patent prior to its expiration under 35 U.S.C. § 271(b) and/or (c).

61.     Defendants' acts of infringement were willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

62.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.     A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent and the '723 Patent (prior to expiration);

b.      A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

c.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '247 Patent and the '723 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

d.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: October 13, 2025        Respectfully submitted,

*/s/ Whitney A. Davis*

Whitney A Davis
TX SBN 24084843
**Eggleston King Davis LLP**
102 Houston Avenue, Suite 300
Weatherford, TX 7608/6
Email: whit@ekdlaw.com
Tel: (817) 596-4200

and

Glenn D. Bellamy
**Wood Herron & Evans LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on this the 13th day of October 2025.  Notice of this filing will be sent to all parties by  operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Whitney A. Davis*

Whitney A Davis