IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ABC IP, LLC, *et al.*, | Case No. 3:25-cv-00201-DCG |
| *Plaintiffs*, | |
| v. | **ANSWER AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT** |
| Hanes Tactical LLC, *et al.*, | |
| *Defendants.* | **Demand For Jury Trial** |

Hanes Tactical LLC ("Hanes") and Damion Terrell Bennett (collectively, "Defendants") respond to the First Amended Complaint (Document 22, "Complaint") of ABC IP, LLC and Rare Breed Triggers, Inc. (collectively, "Plaintiffs") as follows. For convenience, this Answer uses the headings used in the Complaint; however doing so is not an admission that those headings are correct or appropriate. Every allegation not specifically admitted is denied.

PARTIES

1. Defendants lack knowledge or information sufficient to form a belief regarding the allegations of ¶1 of the Complaint.

2. Defendants lack knowledge or information sufficient to form a belief regarding the allegations of ¶2 of the Complaint.

3. Defendants admit the allegations of ¶3 of the Complaint.

4. Defendants admit the allegations of ¶4 of the Complaint.

5. Defendants admit the allegations of ¶5 of the Complaint.

JURISDICTION AND VENUE

6. With respect to ¶6 of the Complaint, Defendants admit that Plaintiffs brought an

1

action for patent infringement but deny that the action has merit.

7.      Defendants admit the allegations of ¶7 of the Complaint.

8.      Defendants admit the allegations of ¶8 of the Complaint.

9.      Defendants admit the allegations of ¶9 of the Complaint.

<u>BACKGROUND</u>

10.     With respect to ¶10 of the Complaint, Defendants admit that Plaintiffs' lawsuit asserts contributory and induced infringement of U.S. Patent No. 12,038,247 (the "'247 Patent") and U.S. Patent No. 7,398,723 (the "'723 Patent") but deny that the lawsuit has merit. Exhibits A and B to the Complaint are not a certified copies of either the '247 Patent or the '723 Patent, so Defendants lack knowledge and information sufficient to form a belief regarding the remaining allegations.

11.     With respect to ¶11 of the Complaint, Defendants admit that the '247 Patent issued on July 16, 2024, and that it purports to claim the benefit of a provisional application that was filed on September 8, 2022, but deny that the patent is entitled to such priority date or that the patent was lawfully and properly issued due to its invalidity.

12.     With respect to ¶12 of the Complaint, Defendants admit that the '723 Patent issued on July 15, 2008 and was filed on April 25, 2003, but deny that the patent was properly issued due to its invalidity.

13.     Defendants admit that the '723 Patent lapsed for nonpayment of a maintenance fee and that a Petition to Accept Unintentionally Delayed Payment of Maintenance fee was filed on April 20, 2022, and the '723 Patent was reinstated on May 16, 2022 but lack knowledge or information sufficient to form a belief regarding the remaining allegations of ¶13 of the Complaint.

14.     With respect to ¶14 of the Complaint, Defendants admit that a purported

assignment of the '247 Patent and the '723 Patent to ABC have been recorded at the U.S. Patent and Trademark Office but lack knowledge and information sufficient to form a belief regarding the remaining allegations.

15.     Defendants admit that the '723 Patent is expired but otherwise deny for lack knowledge or information sufficient to form a belief regarding that the expiration date listed in ¶15 of the Complaint is accurate.

16.     Defendants lack knowledge or information sufficient to form a belief regarding the allegations of ¶16 of the Complaint.

17.     Defendants deny the allegations of ¶17 of the Complaint.

18.     With respect to ¶18 of the Complaint, Defendants admit that ABC's counsel sent a cease-and-desist letter to Defendants but deny that the letter had merit, as explained in their May 8, 2025 reply letter, attached herein as Exhibit 1.

<u>The Invention</u>

19.     With respect to ¶19 of the Complaint, the '723 Patent's disclosure speaks for itself.

20.     With respect to ¶20 of the Complaint, Defendants admit that the '247 Patent discloses a device for accelerating the firing sequence of a semiautomatic firearm, where the device can be selected to operate in a standard semiautomatic mode or a forced-reset semiautomatic mode. The disclosed device uses a cam (which is a component that the '247 Patent discloses as separate from the selector that selects the mode of operation) that is rotated by movement of the bolt carrier to force the trigger member to reset.  The '247 Patent discloses that the device can be used in AR-pattern firearms.  However, Defendants deny that the '247 Patent's device is novel and the remaining allegations.

21.     Defendants admit the allegations of ¶21 of the Complaint.

22.     With respect to ¶22 of the Complaint, Defendants admit that the disconnector (in a standard AR-pattern firearm) holds the hammer in a cocked position until the trigger sear can engage the hammer.  In a standard semiautomatic AR-pattern firearm (i.e., with no modified or customized components), this prevents the firearm from either firing multiple rounds on a single pull of the trigger or from allowing the hammer to follow the bolt carrier as it returns to battery.

23.     With respect to ¶23 of the Complaint, Defendants admit that at least some forced-reset trigger designs utilize the cycling of the bolt carrier to cause the trigger member to be forced to the reset position (even where the user is maintaining and has not released pressure on the trigger).

24.     With respect to ¶24 of the Complaint, the '723 Patent's teaching speaks for itself.

25.     With respect to ¶25 of the Complaint, the '723 Patent's claims speak for themselves.

26.     With respect to ¶26 of the Complaint, Defendants admit that the '247 Patent discloses a device with two modes of operation (standard semiautomatic and forced-reset automatic) but deny that the Patent discloses an improvement in such technologies, since such technologies were disclosed long before the '247 Patent.

27.     With respect to ¶27 of the Complaint, Defendants admit that the '247 Patent discloses a device that can operate in forced-reset mode, where a cam (which is a separate component from the mode selector) is rotated by movement of the bolt carrier to force the trigger member to reset.

<u>The Infringing Devices</u>

28.     With respect to ¶28 of the Complaint, Defendants admit that Hanes is offering for sale and selling a Super Safety kit and components therefor.  Defendants deny that the Super Safety

embodies the technology claimed in the '247 Patent and the remaining allegations.

29.    Defendants deny the allegations of ¶29 of the Complaint.

30.    Defendants deny the allegations of ¶30 of the Complaint.

31.    Defendants deny the allegations of ¶31 of the Complaint.

32.    Defendants deny the allegations of ¶32 of the Complaint.

33.    With respect to ¶33 of the Complaint, Defendants admit that Hanes sold and offered to sell the Super Safety kits and associated components via Facebook but deny the remaining allegations (including that the Super Safety infringes the '247 Patent).

34.    With respect to ¶34 of the Complaint, Defendants admit that Hanes sold and offered for sale a Super Safety cam and lever (that replace a standard AR-pattern safety selector), a trigger customized to work with the Super Safety and sells precut trigger members made by others. Defendants deny the remaining allegations.

35.    Defendants admit that ¶35 of the Complaint quotes 35 U.S.C. §271(c).

36.    Defendants deny the allegations of ¶36 of the Complaint.

37.    Defendants admit that ¶37 of the Complaint quotes 35 U.S.C. §271(b) and (c). Defendants deny the remaining allegations.

38.    Defendants deny the allegations of ¶38 of the Complaint.

39.    With respect to ¶39 of the Complaint, the "Infringing Devices" are defined as the Super Safety kits sold by Hanes (see ¶21 of the Complaint); but the Super Safety kit cannot operate by itself in any mode.  Furthermore, the Super Safety kit includes no separate safety selector. Therefore Defendants deny these allegations.

40.    With respect to ¶40 of the Complaint, it is unclear what the referenced "user" is using and what "cam" is referenced, so Defendants lack knowledge or information sufficient to

form a belief regarding these allegations.

41.     Defendants deny the allegations of ¶41 of the Complaint.

42.     Defendants deny the allegations of ¶42 of the Complaint.

<u>COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT</u>

43.     Defendants incorporate by reference the preceding paragraphs as if fully set forth

herein.

44.     Defendants deny the allegations of ¶44 of the Complaint.

45.     Defendants deny the allegations of ¶45 of the Complaint.

46.     Defendants deny the allegations of ¶46 of the Complaint.

47.     Defendants deny the allegations of ¶44 of the Complaint.

48.     Defendants deny the allegations of ¶48 of the Complaint.

49.     Defendants deny the allegations of ¶49 of the Complaint.

50.     Defendants deny the allegations of ¶50 of the Complaint.

51.     Defendants deny the allegations of ¶51 of the Complaint.

<u>COUNT II – INDIRECT INFRINGEMENT OF THE '247 PATENT</u>

52.     Defendants incorporate by reference the preceding paragraphs as if fully set forth

herein.

53.     Defendants deny the allegations of ¶53 of the Complaint.

54.     Defendants deny the allegations of ¶54 of the Complaint.

55.     Defendants deny the allegations of ¶55 of the Complaint.

56.     Defendants deny the allegations of ¶56 of the Complaint.

57.     Defendants deny the allegations of ¶57 of the Complaint.

58.     Defendants deny the allegations of ¶58 of the Complaint.

59.     Defendants deny the allegations of ¶59 of the Complaint.

60.     Defendants deny the allegations of ¶60 of the Complaint.

61.     Defendants deny the allegations of ¶61 of the Complaint.

62.     Defendants deny the allegations of ¶62 of the Complaint.

<u>PRAYER FOR RELIEF</u>

Defendants deny that Plaintiff is entitled to the relief requested in the Complaint.

**<u>AFFIRMATIVE DEFENSES</u>**

1.     The Complaint fails to state a claim upon which relief can be granted.

2.     Defendants have not infringed and do not infringe any valid and enforceable claim of the '247 Patent.

3.     The asserted claims of the '247 Patent do not meet the statutory requirements of the Patent Act, 35 U.S.C. §101 *et seq*., and thus are invalid.

4.     The '247 Patent is unenforceable due to inequitable conduct.

5.     Plaintiffs have failed to plead and prove compliance with 35 U.S.C. §287, thus limiting any damages that they may recover.

6.     Plaintiffs' claims fail in whole or in part under principles of equity, including, without limitation, because of Plaintiffs' unclean hands and acts done in bad faith.

7.     Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

8.     Plaintiffs are not entitled to injunctive relief as they, at minimum, have not suffered any irreparable injury.

9.     Defendants' conduct was not the proximate cause of Plaintiffs' alleged damages.

10.    Pursuant to Federal Rule of Civil Procedure 11, at the time of the filing of this Answer, all possible affirmative defenses may not have been alleged inasmuch as sufficient facts

and other relevant information may not have been available after reasonable inquiry, and therefore Defendants reserve their right to amend this Answer to allege additional affirmative defenses if subsequent investigation warrants the same.

## COUNTERCLAIMS

For their Counterclaims in the above-captioned action, Defendants hereby allege against Plaintiffs as follows:

## PARTIES

1.      Hanes Tactical LLC ("Hanes") is a limited liability company existing under the laws of the State of Texas.

2.      Damion Bennett is an individual residing in Texas.

3.      Upon information and belief, as set forth in ¶1 of the Complaint, ABC is a Delaware limited liability company having an address in Dover, Delaware.

4.      Upon information and belief, as set forth in ¶2 of the Complaint, Rare Breed Triggers, Inc. ("Rare Breed") is a Texas corporation having its principal place of business in Wichita Falls, Texas.

## JURISDICTION

5.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, 2202, and Title 35 of the U.S. Code.

6.      This Court has personal jurisdiction over Plaintiffs because they have submitted themselves to the Court's jurisdiction by filing the instant action, by which they purposefully availed themselves of the benefits and protections of this Court.

## BACKGROUND

7.      Plaintiffs filed this action, accusing Defendants of infringing the '247 Patent through certain products offered for sale by Hanes.  Plaintiffs assert that the '247 Patent is valid and enforceable.

8.      Pursuant to 28 U.S.C. §2201, federal courts are permitted to declare the rights and other legal relations of interested parties seeking such a declaration, upon the filing of an appropriate pleading in a case of actual controversy within its jurisdiction, whether or not further relief is or could be sought.

9.      Because Defendants disagree that the '247 Patent is valid and enforceable, an actual and justiciable controversy exists between Defendants and Plaintiffs.

## COUNT I:
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '247 PATENT

10.      Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

### Prosecution of the '247 Patent

11.      The '247 Patent issued on application no. 18/325,225 (the "'225 Application"), which was filed May 30, 2023.

12.      The '225 Application claimed the benefit of provisional application no. 63/374,941 ("Provisional Application"), which was filed September 8, 2022.

13.      The '225 Application included certain disclosure that was not included in the Provisional Application.

14.      That disclosure (of the '225 Application that was not included in the Provisional Application) is not entitled to the effective filing date of the Provisional Application.

15.    Mr. Bellamy is indicated (on an Electronic Acknowledgement Receipt) as the person who authorized the filing of the Provisional Application and is also indicated (on an Electronic Payment Receipt) as the person who authorized the payment of the filing fee for the Provisional Application.

16.    Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the U.S. Patent and Trademark Office ("USPTO"), which includes a duty to disclose to the USPTO all information known to that individual to be material to patentability.

17.    One individual to whom such duty applies, with respect to the '247 Patent, is Mr. Glenn D. Bellamy.

18.    Mr. Bellamy is indicated (on an Electronic Acknowledgement Receipt) as the person who authorized the filing of the '225 Application.

19.    Mr. Bellamy signed the following documents submitted during the prosecution of the '247 Patent: (a) Transmittal for Power of Attorney to One or More Registered Practitioners, identifying himself as the "Attorney of Record"; (b) Application Data Sheet; (c) Patent Assignment Cover Sheet; (d) Comments on Examiner's Reasons for Allowance; and (e) Fee(s) Transmittal form for the issue fee.

20.    Mr. Bellamy is also indicated (on Electronic Payment Receipts) as the person who authorized the payment of various fees for the '225 Application.

21.    In the Notice of Allowance of the '225 Application, the USPTO Examiner stated that (in his opinion) the closest prior art was U.S. Patent 7,398,723 ("Blakley," attached herein as Exhibit 2).  The Examiner also stated that Blakley discloses various claim limitations of the '225 Application, including the "hammer," "trigger member," "disconnector," and "cam" limitations of

claims 1, 4, 9, 14, 15 and 20.

22.    The Examiner stated that (in his opinion) Blakley does not disclose

[a] a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

[b] whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

[c] whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member;

[d] and there is no teaching in the prior art that would have motivated one of ordinary skill in the art to modify Blakley in such a manner.

23.    The above-identified portion [a] corresponds to the "safety selector" limitation of claims 1, 4, 9, 14, and 20 of the '225 Application.

24.    The above-identified portion [b] corresponds to the first "whereupon" limitation (regarding the "standard semi-automatic position") of claims 1, 4, 9, 14, and 20 of the '225 Application.

25.    The above-identified portion [c] corresponds to the second "whereupon" limitation (regarding the "forced reset semi-automatic position") of claims 1, 4, 9, 14, and 20 of the '225 Application.

26.    However, Mr. Bellamy knew of prior art that disclosed these limitations.

**Tommy Triggers FRT-15-3MD Prior Art**

27.    Such prior art includes a trigger assembly sold by Mr. Mladen Thomas Strbac (d/b/a Tommy Triggers) called the FRT-15-3MD.

28.    Tommy Triggers was selling the FRT-15-3MD as early as January 17, 2022.

29.    Mr. Bellamy was aware of the FRT-15-3MD because he signed and filed an infringement complaint against Mr. Strbac/Tommy Triggers on behalf of ABC and Rare Breed on February 21, 2022.  *See Rare Breed Triggers, LLC v. Strbac*, No. 1:22-cv-280 (N.D. Ohio) (ECF No. 1, "Strbac Complaint," attached herein as Exhibit 3).  That complaint describes and includes several photos of the FRT-15-3MD.  That complaint includes, as an exhibit, a cease-and-desist letter dated January 17, 2022, signed by Mr. Bellamy and sent to Tommy Triggers regarding that trigger assembly.

30.    Some of the photos of the FRT-15-3MD from the Strbac Complaint are shown below:

(the remainder of this page intentionally left blank)



 





31.    The FRT-15-3MD was in public use, on sale, or otherwise available to the public before the '225 Application was filed.

32.    The FRT-15-3MD was in public use, on sale, or otherwise available to the public before the Provisional Application was filed.

33.    The FRT-15-3MD qualifies as prior art to the '247 Patent under 35 U.S.C. §102(a)(1).

34.    Mr. Strbac filed a provisional patent application (no. 63/297,884) on January 10, 2022, which discloses and confirms details about the FRT-15-3MD.

35.     The Strbac Complaint discloses (in ¶¶ 44-45, 47) that a firearm with the FRT-15-3MD has a safety selector (that would be mounted in the fire control mechanism pocket) that can be rotated to switch between safe, standard semiautomatic, and forced-reset semiautomatic modes. This disclosure of a three-position safety selector used with a forced-reset trigger directly meets portion [a] of what the Examiner found missing from the cited prior art in ¶22 above.

36.     The Strbac Complaint discloses (in ¶¶ 27, 29, 45) that a firearm with the FRT-15-3MD can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. In that standard semiautomatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. This disclosure of a standard semiautomatic mode meets portion [b] of what the Examiner found missing from the cited prior art in ¶22 above.

37.     The Strbac Complaint discloses (in ¶¶ 44-45, 47, 50, 76-77) that a firearm with the FRT-15-3MD can operate in forced-reset mode. In that mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer, but the FRT-15-3MD prevents the disconnector hook from catching the hammer hook. Thereafter, the bolt carrier moves forward into battery, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member. This disclosure of a forced-reset semiautomatic mode meets portion [c] of what the Examiner found missing from the cited prior art in ¶22 above.

38.     Further with respect to portion [c], Blakley discloses a forced-reset semiautomatic mode, where rearward movement of the bolt carrier causes rearward pivoting of said hammer and

pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook (Fig. 2, 10:34-55), and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member (Fig. 3, 10:55-11:5).

39.    Additionally, Blakley teaches optionally selecting or deselecting the forced-reset mode by operating the selector and having the trigger extension move forward or rearward, which would either allow the cam (when pivoted by the bolt carrier) to contact the trigger extension (thus forcing a reset of the trigger) or prevent the cam from contacting the trigger extension (thus preventing the cam from resetting the trigger). (11:11-29.)

40.    A person of ordinary skill in the relevant art ("POSA") would thus have been motivated to modify Blakley's trigger mechanism to include a three-position safety selector as taught by the FRT-15-3MD to allow the firearm to operate in each of three modes (safe, standard semiautomatic, and forced-reset semiautomatic).

41.    Had the Examiner been aware of the FRT-15-3MD, he would have rejected at least pending claims 1, 4, 9, 14, and 20 of the '225 Application under 35 U.S.C. §103 in light of Blakely and the FRT-15-3MD.

42.    Therefore, the FRT-15-3MD was material to the patentability of at least claims 1, 4, 9, 14, and 20 of the '225 Application and should have been disclosed to the USPTO.

43.    While ABC, as the applicant for the '247 Patent, submitted (through counsel) an Information Disclosure Statement to the USPTO during the prosecution of the '225 Application, neither ABC generally nor Mr. Bellamy specifically disclosed the FRT-15-3MD to the USPTO during prosecution of the '225 Application.

44.    In fact, Mr. Bellamy did not submit any Information Disclosure Statement to the USPTO for the '225 Application.

45.    While direct evidence of Mr. Bellamy's state of mind is solely within his control, the information available to Defendants supports the inference that Mr. Bellamy intentionally withheld the FRT-15-3MD from the USPTO in an attempt to obtain allowance of the '225 Application and issuance of the '247 Patent.

46.    As explained above in ¶29, Mr. Bellamy was well-aware of the FRT-15-3MD and its structure and operation, having filed suit on it against Tommy Triggers in early 2022.  That suit resulted in a dismissal in October 2022, just a month after the Provisional Application was filed.

47.    Mr. Bellamy was aware that the FRT-15-3MD discloses limitations that the Examiner believed were missing from Blakley.  Mr. Bellamy thus realized that, if the FRT-15-3MD were disclosed to the USPTO, the Examiner would reject the pending claims.  Mr. Bellamy deliberately and intentionally withheld the FRT-15-3MD from the USPTO in an effort to deceive the USPTO into issuing an invalid patent.

### Rare Breed FRT-15E3 Prior Art

48.    The Strbac Complaint also states that on January 15, 2022, Plaintiffs publicly demonstrated a three-position forced-reset trigger in which a safety selector switch can change the mode of operation between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with locking bar modes.  That complaint refers to this three-position trigger as the FRT-15E3 and shows a photo of it:



49.    A video of Mr. Lawrence DeMonico, Rare Breed's President, demonstrating a firearm with the FRT-15E3 was uploaded to YouTube on January 15, 2022, at https://www.youtube.com/watch?v=ZJ0lWi2kfC0.    The video confirms details about the FRT-15E3.

50.    The FRT-15E3 was disclosed to the public before the '225 Application was filed.

51.    The FRT-15E3 was disclosed to the public before the Provisional Application was filed.

52.    The FRT-15E3 qualifies as prior art to the '247 Patent under 35 U.S.C. §102(a)(1).

53.    The Strbac Complaint discloses (in ¶38) that a firearm with the FRT-15E3 has a safety selector (that would be mounted in the fire control mechanism pocket) that can switch between safe, standard semiautomatic, and forced-reset semiautomatic modes.   This disclosure of a three-position safety selector used with a forced-reset trigger directly meets portion [a] of what the Examiner found missing from the cited prior art in ¶22 above.

54.    The Strbac Complaint discloses (in ¶¶ 27, 29, 38, 45) that a firearm with the FRT-15E3 can operate in a standard semiautomatic with disconnector mode, which is much like that of a standard AR-15 trigger.   In that standard semiautomatic mode, rearward movement of the bolt

carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.  This disclosure of a standard semiautomatic mode meets portion [b] of what the Examiner found missing from the cited prior art in ¶22 above.

55.    The Strbac Complaint discloses (in ¶¶ 35-36, 38, 45) that a firearm with the FRT-15E3 can operate in forced-reset mode, like the FRT-15 model also described in that complaint. In that mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer, but the FRT-15E3 prevents the disconnector hook from catching the hammer hook.  Thereafter, the bolt carrier moves forward into battery, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.  This disclosure of a forced-reset semiautomatic mode meets portion [c] of what the Examiner found missing from the cited prior art in ¶22 above.

56.    A POSA would thus have been motivated to modify Blakley's trigger mechanism to include a three-position safety selector as taught by the FRT-15E3 to allow the firearm to operate in each of three modes (safe, standard semiautomatic, and forced-reset semiautomatic).

57.    Had the Examiner been aware of the FRT-15E3, he would have rejected at least pending claims 1, 4, 9, 14, and 20 of the '225 Application under 35 U.S.C. §103 in light of Blakely and the FRT-15E3.

58.    Therefore, the FRT-15E3was material to the patentability of at least claims 1, 4, 9, 14, and 20 of the '225 Application and should have been disclosed to the USPTO.

59.    Neither ABC generally nor Mr. Bellamy specifically disclosed the FRT-15E3 to the

USPTO during prosecution of the '225 Application.

60.    While direct evidence of Mr. Bellamy's state of mind is solely within his control, the information available to Defendants supports the inference that Mr. Bellamy intentionally withheld the FRT-15E3 from the USPTO in an attempt to obtain allowance of the '225 Application and issuance of the '247 Patent.

61.    Mr. Bellamy was well-aware of the FRT-15E3 because he discussed and showed it in the Strbac Complaint in early 2022.

62.    Mr. Bellamy was aware that the FRT-15E3 discloses limitations that the Examiner believed were missing from Blakley.  Mr. Bellamy thus realized that, if the FRT-15E3 were disclosed to the USPTO, the Examiner would reject the pending claims.  Mr. Bellamy deliberately and intentionally withheld the FRT-15E3 from the USPTO in an effort to deceive the USPTO into issuing an invalid patent.

## The '247 Patent is Unenforceable

63.    Mr. Bellamy's intentional withholding of at least the above material references during prosecution of the '225 Application is inequitable conduct that renders all claims of the resulting '247 Patent unenforceable.

64.    Defendants thus request a declaration from this Court that the '247 Patent is unenforceable.

## COUNT II:
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '247 PATENT

65.    Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

66.    Plaintiffs asserted claim 15 of the '247 Patent, which claims a firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position,

whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

67.     Blakley (U.S. Patent 7,398,723) issued July 15, 2008, and is thus prior art to the '247 Patent under 35 U.S.C. §102(a)(1) and (2).

68.     As explained in Count I above, the Tommy Triggers FRT-15-3MD is also prior art to the '247 Patent.

69.     At least claim 15 of the '247 Patent is invalid under at least 35 U.S.C. §103 over at least Blakley and the FRT-15-3MD.

70.    Blakley discloses a firearm trigger mechanism. (Figs. 1-5, 4:37-43.) The FRT-15-3MD is also a firearm trigger mechanism.

71.    Blakley discloses a hammer 56 having a sear catch 52 and a hook 54 for engaging a disconnector 38 and adapted to be mounted in a fire control mechanism pocket of a receiver 16 to pivot on a transverse hammer pivot axis 58 between set (Fig. 3) and released (Fig. 1) positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier. (Figs. 1-3, 5, 2:32-48, 4:12-15, 5:44-59, 10:34-38.) As shown above, the FRT-15-3MD also has a hammer having a sear catch and a hook for engaging a disconnector, adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier.

72.    Blakley discloses a trigger member (combination of 22 and 90) having a sear 34 and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis 46 between set (Fig. 3) and released (Fig. 1) positions. (Figs. 1-5, 2:1-15, 2:23-26, 3:10-20, 5:13-27, 5:35-38, 6:22-32, 8:30-34, 10:34-47.) The FRT-15-3MD also has a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions.

73.    Blakley discloses that the sear 34 and the sear catch 52 are in engagement in the set positions (Fig. 3) of the hammer 56 and the trigger member (22 and 90), and are out of engagement in the released positions (Fig.1) of the hammer and the trigger member. (Figs. 1-3, 2:37-38, 5:49-50, 10:47-50.) Also, the FRT-15-3MD's sear and sear catch are in engagement in the set positions of the hammer and the trigger member, and are out of engagement in the released positions of the hammer and the trigger member.

74.     Blakley discloses the disconnector 38 having a hook 44 for engaging the hammer 54 and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis 40, 46.  (Figs. 1-3, 5, 2:16-26, 5:28-38, 6:55-65, 10:34-38.)  The FRT-15-3MD's disconnector also has a hook for engaging the hammer and is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis.

75.     Blakley discloses a cam 66 having a cam lobe 69 and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position (e.g., Fig. 1) and a second position (Fig. 2), where in the second position the cam lobe forces the trigger member (90 and 22) towards the set position.  (Figs. 1-5, claim 1, 2:49-3:2, 3:10-20, 4:40-43, 5:60-6:14, 6:22-32, 7:19-38, 7:46-53, 10:34-11:25.)  Similarly, the FRT-15-3MD's trigger member is also forced towards the set position by having an upper portion of the trigger member be pressed downwards.

76.     Blakley discloses a safety selector 82 that is movably mounted in the fire control mechanism pocket and moves between several modes, including forced-reset semiautomatic mode, standard semiautomatic mode, and safe, as would  be understood by a POSA.  (Figs. 1-5, 3:3-9, 6:15-21, 7:39-45, 11:11-29.)  The FRT-15-3MD also has a safety selector that is movably mounted in the fire control mechanism pocket and moves between safe, standard semiautomatic, and forced-reset semiautomatic modes.

77.     Blakley discloses that its firearm can operate in forced-reset semiautomatic mode, where the cam 66 is in the second position (e.g., Fig. 2), rearward movement of the bolt carrier causes rearward pivoting of the hammer 56, and thereafter the bolt carrier moves forward into battery, at which time the user can pull the trigger member (22 and 90) to fire the firearm.  (Figs. 2-3, 5, claim 1, 1:7-10, 1:54-60, 4:40-43, 6:33-36, 7:54-8:43, 10:12-24, 10:34-11:30.)

78.    The FRT-15-3MD can also operate in forced-reset semiautomatic mode, where rearward movement of the bolt carrier causes rearward pivoting of the hammer, and thereafter the bolt carrier moves forward into battery, at which time the user can pull the trigger member to fire the firearm.  The FRT-15-3MD's disconnector has a tail extending toward the safety selector. When the FRT-15-3MD's safety selector is in the forced-reset mode, the safety selector pushes down on the disconnector tail to prevent the disconnector hook from catching the hammer hook.

79.    It would be obvious to a POSA to modify Blakley's disconnector to include a tail (as in the FRT-15-3MD and many other AR-pattern disconnectors).  Such a disconnector would be prevented from having its hook catch the hammer hook in forced-reset semiautomatic mode to ensure that it does not interfere with the increased firing rate.

80.    Blakley discloses that its firearm can operate in standard semi-automatic mode (by disabling the forced-reset effect), where the cam 66 is in the first position (e.g., Fig. 3), rearward movement of the bolt carrier causes rearward pivoting of the hammer 56 such that the disconnector hook 44 catches the hammer hook 54, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member (22  and 90) to free the hammer from the disconnector 38 to permit the hammer and the trigger member to pivot to the set positions (Fig. 3) so that the user can pull the trigger member to fire the firearm.  (Figs. 1, 3-5, 10:34-38, 10:46-47, 10:55-58, 11:11-29.)  The FRT-15-3MD can also operate in standard semiautomatic mode, where rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and the trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.

81.    Throughout discovery, Defendants are likely to identify additional invalid claims, additional prior art, and additional invalidity grounds.

82.    Defendants thus request a declaration from this Court that the '247 Patent is invalid.

## DEMAND FOR JURY TRIAL

Defendants hereby demand a trial by jury on all issues so triable.

Dated: December 4, 2025                    Respectfully submitted,

                                           */s/ H. Dale Langley, Jr.*
                                           H. Dale Langley, Jr.
                                           Texas Bar No. 11918100
                                           Federal ID No. 25026
                                           dlangley@iptechlaw.com
                                           The Langley Law Firm, PC
                                           1803 West Avenue
                                           Austin, Texas 78701
                                           (512) 477-3830 - Telephone
                                           (866) 735-9129 - Facsimile

                                           John M. Skeriotis (*pro hac vice* motion forthcoming)
                                           jms@etblaw.com
                                           **EMERSON, THOMSON & BENNETT, LLC**
                                           1914 Akron-Peninsula Road
                                           Akron, Ohio 44313
                                           (330) 434-9999 – Telephone
                                           (330) 434-8888 – Facsimile

                                           *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 4th day of December, 2025, through a notice of electronic filing through the Court's CM/ECF system.

                                           */s/ H. Dale Langley, Jr.*
                                           H. Dale Langley, Jr.