EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company, and Rare Breed Triggers, Inc., a Texas corporation,** | ) ) ) | CASE NO.  EP-25-cv-201-DCG |
| | ) | |
| **Plaintiffs.** | ) | **SECOND AMENDED COMPLAINT** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Hanes Tactical LLC, a Texas limited liability company, and Damion Terrell Bennett, an individual residing in Texas,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

---

**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

---

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively "Plaintiffs") accuse Hanes Tactical LLC ("Hanes") and Damion Terrell Bennett ("Bennett") (collectively, "Defendants"), of infringing U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), and 7,398,723 ("the '723 Patent") as follows:

<u>**PARTIES**</u>

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed Triggers, Inc. ("Rare Breed") is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150, Wichita Falls, TX 76306.

3.      Upon information and belief, Defendant Hanes Tactical LLC ("Hanes") is a limited liability company existing under the laws of the state of Texas and has a place of business at 2414 Carrington Road, Fort Bliss, Texas 79916.

4.      Upon information and belief, Defendant Damion Terrell Bennett ("Bennett") is an individual and member of the United Staes Army residing and doing business at 2414 Carrington Road, Fort Bliss, Texas 79916.

5.      Upon information and belief, Bennett did business as "Hanes Tactical" as a sole proprietor before forming the Hanes Tactical LLC entity.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, 284, and 285.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

8.      Personal jurisdiction and venue over Defendants are proper in this District because the Defendants reside in and/or have a place of business this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or have a regular and established place of business in this District.

## BACKGROUND

10.      This lawsuit asserts contributory and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent") and 7,398,723 ("the '723 Patent"). True and correct copies of the '247 Patent, and the '723 Patent are attached hereto as Exhibits A and B, respectively.

11.     This lawsuit asserts direct infringement of U.S. Patent No. 12,031,784 ("the '784 Patent"). A true and correct copy of the '784 Patent is attached hereto as Exhibit C.

12.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

13.     The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. The application from which the '784 Patent issued claimed a priority date of November 5, 2021.

14.     The '723 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 15, 2008. The application from which the '723 Patent issued has a priority date of April 25, 2003.

15.     The '723 Patent lapsed for nonpayment of its final maintenance fee. The inventor and owner of the '723 Patent at the time, Brian A. Blakley, did not receive a reminder of the maintenance fee being due from his attorney and the failure to pay the maintenance fee in time was inadvertent. A Petition to Accept Unintentionally Delayed Payment of Maintenance fee was filed on April 20, 2022, and the '723 Patent was reinstated on May 16, 2022.

16.     ABC is the current assignee and owner of all right, title, and interest in and to the '247, '784 and '723 Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

17.     The '723 Patent expired on September 22, 2024.

18.     Rare Breed is the exclusive licensee of the '247 and '784 Patents.

19.     Upon information and belief, Defendants have committed acts of direct, contributory, and/or induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

20.     On March 28, 2025, counsel for Plaintiffs sent a cease and desist demand letter to Hanes, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

## The Invention

21.     The '723 Patent discloses a semiautomatic trigger mechanism that forces the trigger to reset via a cam and claims a method of accelerating the firing cycle using such a trigger mechanism.

22.     The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

23.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward

into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pull on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

24.      In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single function of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

25.      In contrast. in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

26.      The '723 Patent teaches a trigger mechanism in which the cycling action of a semiautomatic firearm causes a cam to forcibly reset the trigger member and holds it there until the action has reached the end of its cycle and is ready to fire again.

27.      The '723 Patent claims a method of accelerating the firing cycle of a semi-automatic firearm. According to the method, a firearm trigger is depressed with a finger to

discharge the firearm. This activates a reciprocating mechanism within the firearm (such as a bolt or bolt carrier) which causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready to fire position.

28.     The '247 Patent relates to a semiautomatic trigger mechanism that represents improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

29.     The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam locks the trigger member, preventing it from being pulled a second (or subsequent) time, until the bolt carrier has returned to the in-battery position.

30.     The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. The invention of the '784 Patent overcomes the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

**The Infringing Devices**

31.     On information and belief, Defendants are currently making, using, selling, and/or offering for sale a "Super Safety" (3 Position) ("the Infringing Device"), which embodies the technology claimed in the '247 and the '784 Patents.

32.     On information and belief, Defendants made, imported, used, sold, and/or offered for sale the Infringing Device, which embodies the technology claimed in the '723 Patent prior to its expiration.

33.     On information and belief, technical specification for the Infringing Devices were exported to China.

34.     On information and belief, the Infringing Devices were imported by Defendants from China.

35.     On information and belief, the nature of the infringing Devices was falsely identified on import documents.

36.     On information and belief, Defendants sell or offer for sale the Infringing Device via at least Facebook posts and direct messaging.  Exemplary photographs of these are shown below:



37.     Defendants sell a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 Patent. Defendants also sell precut trigger members separately that can be used with cam assemblies made by others to assemble an infringing combination, as shown below:



38.     Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

39.     These parts sold by Defendants are components of a patented apparatus, constituting a material part of the invention. The defendants know that these are especially made or especially adapted for use in an infringement of the '247 and the '723 Patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

40.     Defendants' manufacture, sale, and offer for sale of parts constitute contributory infringement under 35 U.S.C. § 271(c), and their conduct in facilitating their use with third-party devices constitutes active inducement of infringement under 35 U.S.C. § 271(b).

41.    Defendants instructed purchasers to assemble the Infringing Devices in a way that induces infringement the '247 and the '723 Patents.

42.    The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

43.    The user can move the cam between safe, standard disconnector semiautomatic mode, and forced reset semiautomatic mode.

44.    For the reasons explained in more specificity below, Defendants' Infringing Devices each infringe at least one claim of the '247 Patent, the '784 Patent, and the '723 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(b) and/or (c).

45.    At least in view of the Defendants' continued infringement after ABC's demand letter, the infringement is willful.

## COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

46.    The allegations set forth in paragraphs 1-45 are fully incorporated into this First Count for Relief.

47.    Upon information and belief, Defendants have and continues to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

48.    An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>**Super Safety**<br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange).<br><br><br><br>(Plaintiff-generated renderings of Super Safety here and below) |

| | |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.  **(Hammer Set Position Above)**  **(Hammer Released Position Above)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions.  The trigger member (Brown) has a sear. |



| | |
|---|---|
| | |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**(Trigger Member Set Position Above)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position. |



| | |
|---|---|
| | **(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red). |
| | **(Disconnector Hook Engaged Above)** |
| and a cam having a cam lobe and adapted to be movably mounted in the | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Super Safety, shown in yellow, in fire control mechanism pocket) |

| fire control mechanism pocket, |  |
| --- | --- |
| | **(Super Safety Cam with Lobe and Lever)** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br>**(Cam and Lobe First Position Above)**<br><br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode. |



**(Cam and Lobe Second Position Above)**

| | |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, |
| | the cam is in the first position. |
| said cam is in said first position, | |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook. |



| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |



| at which time a user must manually release said trigger member to free said hammer from said | at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

| | |
|---|---|
| disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and |  |
| whereupon in a forced reset semi-automatic mode,<br><br><br><br><br><br>Said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | When in the forced reset semi-automatic mode,<br><br>the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook. |



| | and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |
| | at which time the user can pull said trigger member to fire the firearm. | at which time the user can pull the trigger member (Brown) to fire the firearm. |



49.    When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

50.    The Defendants instruct their customers to assemble the components it sells into an infringing combination of parts. Thus, Defendants actively induce infringement of the '247 Patent.

51.    Accordingly, Defendants' sale and/or offer to sell the Infringing Device are infringement under 35 U.S.C. § 271 (a), (b), and/or (c).

52.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

53.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

54.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – DIRECT INFRINGEMENT OF THE '784 PATENT

55.     The allegations set forth in paragraphs 1-54 are fully incorporated into this Second Count for Relief.

43.     Defendants have and continue to directly infringe at least Claim 1 of the '784 Patent by making, using, selling, offering for sale, importing and/or providing and causing all components of the claimed combination (the Infringing Device) to be used without authority within the United States.

56.     An exemplary comparison of the Infringing Device with claim 1 of the '784 Patent when assembled and used as intended with the combination of parts supplied is illustrated in the chart below.

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. |



**Super Safety**
Super Safety 3D Printed Active Trigger System v4.4,
Hoffman Tactical (July 19, 2023) ("Super Safety
Guide") at 12



**Super Safety Installed**
(Plaintiff-generated renderings of Super Safety
here and below; Locking member and bolt carrier
shown here and below in section view for clarity)

"The Super Safety is a mechanism that actively resets
the trigger of a firearm to allow the operator to fire
again, quickly, and efficiently.  The Super Safety has
been designed to operate with AR-15 pattern firearms
that use a mil-spec bolt carrier and fire control group."
Super Safety Guide at 1.

| | |
|---|---|
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement.  **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member.  **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

| | |
|---|---|
| |  |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier. |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position. |



**Unlocked Second Position**

| | |
|---|---|
| the locking member having a body portion that is movably supported | The Super Safety has a body portion that is movably supported by the lower receiver. |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Super Safety has an upwardly extending deflectable portion (lever arm). The dovetail connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and |

another position where it is deflected (depicted in green).



Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.



"The dovetail joint does not immediately transfer torque from the lever to the cam. The lever pivots in the cam until the void is filled. Once the void is filled the hammer can transfer torque to the cam via the

| | |
|---|---|
| | upper and lower contact surfaces and. Note that the void, the lower contact surface, and the upper contact surface, are shown on arbitrary sides of the dovetail, these features may be on either side of the dovetail depending on which direction the lever is moving. The amount that the lever rotates in the dovetail before transferring torque to the cam is such that as the bolt carrier completes its forward movement, the cam rotates the neutral surface away from the cam follower and to a point where the cam follower begins to slide against the cam surface." (referenced numerals removed for clarity).     Super Safety Guide at 4. https://www.scribd.com/document/843484122/Super-Safety-Documentation |
| and a deflected position. | The lever is now shown deflected independent of the body.  |

59.     Claim 4 depends from claim 1 and further specifies "wherein the locking member deflectable portion pivots relative to the body portion." This creates the legal presumption that the "deflectable" limitation is not limited to pivoting movement. And thus, claim 4 is also infringed.

60.     Defendants sell a specially made cam and cam lever that replace a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. These components are installed in combination with a standard AR-pattern hammer and disconnector using standard springs. *See supra,* ¶¶36-37. As such, Defendants are selling all components of the patented combination. Accordingly, Defendants directly infringe the '784 Patent.

61.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(a).

62.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct infringement of the '784 Patent.

63.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

64.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III – INDIRECT INFRINGEMENT OF THE '723 PATENT

65.     The allegations set forth in paragraphs 1-64 are fully incorporated into this Third Count for Relief.

66.     Upon recently learned information and belief, Defendants have contributorily infringed and/or induced infringement of Claim 1 of the '723 Patent prior to its expiration by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

67.    As shown in Paragraph 36, above, Defendants were selling or offering for sale the Infringing Devices at least as of February 2, 2024.

68.    An exemplary comparison of the Infringing Device with claim 1 of the '723 Patent when assembled and used as intended is illustrated in the chart below:

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| 1. A method of accelerating the firing cycle of a semi-automatic firearm comprising the steps of: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism.<br><br><br><br>**Super Safety**<br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12<br><br> |

| | |
|---|---|
| | The Super Safety functions as a cam that, in at least one mode, forces the reset of the trigger and locks the trigger during the cycle of operation.<br><br><br><br>**(Super Safety Cam with Lobe and Lever)**<br><br>This accelerates the firing cycle by allowing the user to pull the trigger without a required release of pressure to allow the reset. "The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently. The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group." Super Safety Guide at 1. https://www.scribd.com/document/843484122/Super-Safety-Documentation When installed and operated as directed by a user, a method of accelerating the firing cycle of a semi-automatic firearm is achieved. |
| depressing a firearm trigger with a finger to discharge the firearm; | The trigger (Brown) is depressed by the user's finger to discharge the firearm.<br><br> |

| | |
|---|---|
| activating a reciprocating mechanism within the firearm that causes a cam, | A reciprocating mechanism (bolt carrier, grey, in this application) is activated by the firing of the firearm.<br> |
| in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position | Reciprocation of the bolt carrier causes the cam (Yellow) to rotate. In a single rotational motion, the cam surface rotates and pushes the trigger forward<br> |
| and hold the trigger forward in the ready to fire position | and holds the trigger forward in the ready to fire position<br> |

| until the reciprocating mechanism has reached an approximately closed, ready to fire position. | The reciprocating mechanism (bolt carrier in this application) has reached an approximately closed, ready to fire position.  |
| --- | --- |

69.     Because the claim "comprises" specified steps, the fact that the Infringing Devices, when installed and used as the Defendants instruct, can also operate according to another method does not avoid infringement.

70.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

71.     The Defendants instructed their customers to assemble the components they sold into an infringing combination of parts. Thus, Defendants actively induced infringement of the '247 Patent prior to its expiration.

72.     Accordingly, when a purchaser installed and used Defendants' Infringing Devices as instructed, there was direct infringement of the '723 Patent.

73.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices was an indirect infringement of the '723 Patent prior to its expiration under 35 U.S.C. § 271(b) and/or (c).

74.     Defendants' acts of infringement were willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

75.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## P

## RAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.     A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent, the '784 Patent, and the '723 Patent (prior to expiration);

b.     A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent and the '784 Patent, or other such equitable relief as the Court determines is warranted;

c.     A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '247 Patent, '784 Patent, and the '723 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

d.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: January 9, 2026            Respectfully submitted,

/s/Glenn D. Bellamy
Glenn D. Bellamy
**Wood Herron & Evans LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

and

Whitney A Davis (TX SBN 24084843)
**Eggleston King Davis LLP**
102 Houston Avenue, Suite 300
Weatherford, TX 7608/6
Email: whit@ekdlaw.com
Tel: (817) 596-4200

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2026, I electronically filed the foregoing with the

Clerk of the United States District Court using the CM/ECF system, which will send notification

of such filing to all attorneys of record.

<u>*s/ Glenn D. Bellamy*</u>
Glenn D. Bellamy